DONALD BRUCE & COMPANY, an
Illinois corporation, Plaintiff,

v.

B. H. MULTI COM CORPORATION, a
New York corporation, Defendant.

No. 96 C 8083.

United States District Court,
N.D. Illinois,
Eastern Division.

May 15, 1997.

James King Gardner, David A. Eide, Neal, Gerber & Eisenberg, Chicago, IL, for Donald Bruce & Co.

Michael Piontek, Steven Lee Underwood, Paul G. Juettner, Juettner, Pyle & Lloyd, Chicago, IL, Robert M. Haroun, Joseph Sofer, Barry J. Marenberg, Sofer & Haroun, LLP, New York City, for B. H. Multi Com Corp.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Donald Bruce & Company has filed a one count complaint for copyright infringement against defendant B. H. Multi Com Corporation. Defendant has filed a motion to dismiss or in the alternative for summary judgment. Because both parties have submitted to the court evidence outside the pleadings, the court will treat the motion as one for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons set forth below, defendant's motion is denied.

### FACTS

Plaintiff is an Illinois corporation engaged in the business of designing, manufacturing and selling jewelry and jewelry related products, including rings, through its "Skalet Gold Division." Defendant is a New York corporation with its principal place of business in New York City, also engaged in the business of design, manufacturing and distribution of jewelry and jewelry related products, including rings. On March 25, 1994, plaintiff's Skalet Gold Division obtained United States Copyright Registration No. VA 298 292, on its "Skalet Ring Line" and in particular on a ring designed as style number S3469G ("the Ring"). Plaintiff alleges that beginning on a date unknown to plaintiff, defendant began selling a style of ring which is identical to, and "a knock-off copy" of the Ring. Plaintiff alleges that defendant's act of copying the ring constitutes copyright infringement in violation of 17 U.S.C. § 501. Defendant seeks a permanent injunction against defendants from further distribution of any rings or other jewelry product copied from plaintiff's copyright of rings, as well as an accounting for all profits made by defendant resulting from the alleged copyright infringement.

### DISCUSSION

There are only two elements of an infringement claim: ownership of a valid copyright, and the copying of constituent elements of the work that are original. *Fonar Corp. v. Domenick,* 105 F.3d 99, 101 (2nd Cir.1997). Plaintiff's certificate of copyright registration is *prima facie* evidence that the copyright is valid. 17 U.S.C. § 410(c): *Fonar,* 105 F.3d at 104. In its motion, defendant challenges both the copyrightability of the Ring, as well plaintiff's compliance with the registration requirements. With respect to the latter argument, defendant argues that the registration is invalid because: plaintiff failed to meet the statutory requirement that a single registration of a collection of jewelry include only related works; plaintiff has not complied with the copyright office's deposit requirements by submitting a partial and obscure deposit making it impossible to determine the extent of plaintiff's copyright claim; and the registration is directed to an unpublished collection of designs which were published at least a year prior to registration.

### A. Copyrightability

Under the 1976 Copyright Act, copyright protection subsists in "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). Works of authorship include pictorial, graphic, and sculptural works. 17 U.S.C. § 102(a)(5). It is undisputed that jewelry is included within the sculptural works classification of Section 102(a)(5). *See Kieselstein–Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989, 993 (2nd Cir.1980).

To be copyrightable, a work of authorship need only be "original," which the Supreme Court has defined to mean that it was not copied and evidences "at least minimal" creativity. *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 345, 111

S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991) ("original," as the term is used in copyright, means only that the work was independently created by the author, and that it possesses at least some minimal degree of creativity). Defendant argues that the Ring is not copyrightable because it is composed simply of "familiar symbols and designs" which are not subject to copyright protection. See 37 C.F.R. § 202.1. In essence, defendant argues that the Ring contains not even the "minimal creativity" as required by *Feist*, and therefore is not an "original" work.

In response, plaintiff argues that the Ring has "a tailored fashion appearance resulting from a unique combination of design features." The Ring contains "an eight mm. tailored gold band, with a U shaped bezel head [which] was designed in a manner such that the stone, a 9 × 7 mm. baguette, does not touch the band and appears to float." These features, according to plaintiff, demonstrate the minimal creativity necessary under *Feist*.

Defendant argues that plaintiff's description of the creative aspects of the Ring in fact evidences a utilitarian aspect that cannot be separated from the sculptural aspect, leaving the entire Ring non-copyrightable. Defendant relies on *DBC of New York, Inc. v. Merit Diamond Corp.*, 768 F.Supp. 414 (S.D.N.Y.1991), in which the plaintiff, a small jewelry manufacturer, sought an order from the court reversing the Register of Copyrights' refusal to register two ring designs. The court found that "the individual elements of [plaintiff's] designs, such as the marquis stones, the trillions and the knife edged shank, are each separately well known in the jewelry trade for [plaintiff's] creation of the rings at bar." The court held that the rings did not feature configuration or design differences which could be characterized to have existed independently of their utilitarian counterparts. Therefore, the court found that the rings were not unique enough to override the determination of the Registry of Copyrights, at least on a motion for summary judgment.

Defendant argues that in the instant case, like in *DBC*, plaintiff cannot separate the design aspects of its Ring from the utilitarian aspects of the beveled head which holds the stone. Defendant's argument is based on a "useful article" exception to grant of copyrightability for sculptural works contained in § 102(a)(5). As noted by the Third Circuit in *Masquerade Novelty, Inc. v. Unique Industries, Inc.* 912 F.2d 663, 670 (3d Cir.1990), Congress attempted to draw as clear a line as possible between copyrightable works of applied art and uncopyrightable works of industrial design, by restricting the definition of sculptural works eligible for copyright protection as follows:

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as a pictorial, graphic or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from and are capable of existing independently of, the utilitarian aspects of the article.

A useful article, however, is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Thus, defendant's argument is applicable only if the Ring is first determined to be a useful article under § 101. If a sculptural work is not a useful article because its sole utilitarian function is to portray the appearance of the article, then it remains copyrightable under 17 U.S.C. § 102(a)(5), and the court need not analyze whether its utilitarian function is separable from the work's sculptural elements. In the instant case, the article in question is a ring. The Ring is purely ornamental, its sole purpose is to portray its appearance. Accordingly, the court concludes that it is not a useful article under Section 101, and the court need not determine whether the utilitarian aspects of the mount are separable from the sculptural elements.

■ That leaves the remaining question of whether the Ring is composed entirely of familiar shapes that are not copyrightable. Originality, however, is a fact-driven inquiry, and a question of fact remains as to whether the Ring is composed of elements other than

those so familiar as to be not copyrightable. *See Mid America Title Co. v. Kirk,* 867 F.Supp. 673, 681 (N.D.Ill.1994). Accordingly, summary judgment is inappropriate.

### B.  Registration Validity

■ Plaintiff does not have a certificate of registration specifically for the Ring. Rather, plaintiff's registration is for the "Skalet Ring Line" which is listed as the title of the work on the certificate. The nature of the work is listed as jewelry design. Attached to the certificate of registration presented to the court are four pages of photographs of rings that comprise the Skalet Gold Ring Line, each page containing approximately thirty rings, for a total of approximately 120 rings for which plaintiff claims a copyright. 17 U.S.C. § 408(c) provides for the single registration for a group of related works. Relying on *Tabra, Inc. v. Treasures de Paradise Designs, Inc.,* 15 U.S.P.Q.2d 1234, 1990 WL 126187 (N.D.Cal.1990), defendant argues that plaintiff's registration is invalid because it fails to indicate in any way how the rings of the Skalet Gold line are related other than by being shown in a group of photographs attached to the registration certificate. In *Tabra,* the plaintiff had a joint copyright over "primitive look" jewelry. The plaintiff brought a motion for preliminary injunction against the defendant who allegedly was selling infringing merchandise. The court reviewed the copyright registrations and the photocopied jewelry covered by each registration and noted that each registration covered several designs, some as many as thirty to fifty, and one over ninety. The jewelry pieces covered by each of the registrations were a conglomeration of designs which did not necessarily bear any resemblance to each other. According to the court, the only apparent relationship is that many pieces were earrings and had a primitive look. The court then reviewed the registration certificates themselves and concluded that they provided no aid in distinguishing or grouping the designs. The forms completed by the plaintiff merely referred to designs for a particular year. They failed to identify any characteristics of the designs that made them related, as contemplated by the statute. "In fact, the registrations do not identify any characteristics, distinctive marks or features of the jewelry they purport to copyright. They refer only to 'jewelry.'" *Id.* at 1237.

Based on its review of the registration certificates and identifying materials, the *Tabra* court concluded that the manner in which the plaintiff had copyrighted the numerous items gave weight to the defendant's argument that the plaintiff was seeking to monopolize the idea of primitive look jewelry. It therefore concluded that the defendant had demonstrated the potential in-validity of the plaintiff's copyright, and refused to grant a preliminary injunction.

In the instant case, as in *Tabra,* plaintiff's identifying materials submitted in support of its registration are a conglomeration of ring designs which bear no resemblance to each other aside from the fact that each apparently is made of gold. Some have stones, some do not. Some have designs, some do not. As in *Tabra,* the registrations do not identify any characteristic, distinctive marks or features of the jewelry. It refers simply to jewelry design. Unlike *Tabra,* however, the instant case is not before the court on plaintiff's motion for a preliminary injunction. While defendant has presented some evidence of the invalidity of plaintiff's copyright, that evidence is insufficient for the court to rule as a matter of law that the copyright is invalid, particularly in light of plaintiff's argument that the relatedness requirement is satisfied if the works are included in a "single unit of publication." *See* 37 C.F.R. § 202.3(b)(3)(i)(A). Plaintiff argues that because the rings are offered for sale together as a line and appear together in their marketing materials, the relatedness requirement is satisfied. Whether the rings are sold separately or together as a line and whether that is sufficient is disputed. Because this material issue of fact remains, defendant's motion for summary judgment on this issue is denied.

■ Defendant next argues that plaintiff's registration fails to sufficiently identify the copyrightable content. In essence, defendant argues that plaintiff failed to deposit the identifying materials required by 37 C.F.R. 202.20(b)(2)(i). Defendant argues that the

photographs attached to the registration give only the top view of each ring, thereby limiting the copyright protection to what is indicated in the picture. Plaintiff argues that the section cited by defendant is inapplicable by its own terms. 37 C.F.R. 202.20(c)(2)(xi)(A)(2) provides that the registration requirements for jewelry are set forth in Section 202.21, which calls for identifying materials consisting of photographs, prints or similar two dimensional reproductions or renderings of the work. In the instant case, plaintiff has provided the Registrar of Copyrights photographs of the Ring. Whether the photograph sufficiently identifies the specific characteristics of the Ring that make it copyrightable is a question of fact that cannot be decided on summary judgment. Although to this court's untrained eye, the photograph of the Ring incorporated into plaintiff's registration does not appear to illustrate plaintiff's claim to "an eight mm. tailored gold band, with a U shaped bezel head [which] was designed in a manner such that the stone, a 9 × 7 mm. baguette, does not touch the band and appears to float," plaintiff may be able to introduce evidence that a person trained in the jewelry industry would be able to draw that conclusion from the photo. Thus, while defendant has presented sufficient evidence to question the validity of the registration, it is not enough for this court to rule as a matter of law that the registration is invalid.

■ Finally, defendant argues that the registration is invalid because plaintiff failed to include a date of first publication, thereby indicating that the registration was for an unpublished work. In fact, the rings had been published (offered for sale) over a year before that application for copyright. Defendant cites *Determined Productions, Inc. v. Koster,* 1993 WL 120463 (N.D.Cal.1993), for its statement that "wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprived the court of jurisdiction over the copyright claim." While it is true that *Koster* so held, other courts have clearly held that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration. *Data Gen. v. Grumman Systems Support,* 36 F.3d 1147, 1161 (1st Cir.1994) (and cases cited therein). In general, an error is immaterial if its discovery is not likely to have led the copyright office to refuse the application. *Id.* In the instant case, there is no evidence to suggest that the copyright office would have refused plaintiff's application had it provided the date of first publication. Moreover, as defendant points out, *Koster* was based, at least in part, on a statement in the United States Copyright Office, Compendium of Copyright Office Practices, Section 1507.07(a): "where a published work was incorrectly registered as unpublished, a supplementary registration is generally inappropriate, since the deposit requirements will not ordinarily have been met." In the instant case, the deposit requirements for jewelry for either published or unpublished works are the same. Therefore, there is no real necessity for requiring a new basic registration. Accordingly, the court concludes that defendant has failed to establish that plaintiff's inadvertent error [1] is material as a matter of law. Accordingly, defendant's motion for summary judgment is denied.

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss or in the alternative for summary judgment is denied.

---

1. Defendant has not contested plaintiff's affidavit indicating that the error was advertent.